SFERRAZZA & KEENAN, PLLC
532 Broadhollow Road
Suite 111
Melville, NY 11747
(631) 753-4400
Sarah M. Keenan, Esq. (SK2603)

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re:                                                              Chapter 11

Vitaris Rehabilitation, LLC,                                        Case No.

                              Debtor.
------------------------------------------------------------x
In re:                                                              Chapter 11

Vitaris Rehabilitation Bay Shore, LLC,                              Case No.

                              Debtor.
------------------------------------------------------------x
In re:                                                              Chapter 11

Vitaris Rehabilitation Bronx, LLC,                                  Case No

                              Debtor.
------------------------------------------------------------x
In re:                                                              Chapter 11

Vitaris Rehabilitation Commack, LLC,                                Case No.

                              Debtor.
------------------------------------------------------------x
In re:                                                              Chapter 11

Vitaris Rehabilitation East Side, LLC,                              Case No.

                              Debtor.
------------------------------------------------------------x

1

```
-----------------------------------------------------------x
In re:

Vitaris Rehabilitation Garden City, LLC,                    Chapter 11
                              Debtor.
                                                            Case No.
-----------------------------------------------------------x


-----------------------------------------------------------x
In re:
                                                            Chapter 11
Vitaris Rehabilitation Long Beach, LLC,
                                                            Case No.
                              Debtor.
-----------------------------------------------------------x
In re:
                                                            Chapter 11
Vitaris Rehabilitation Mount Sinai, LLC,
                                                            Case No.
                              Debtor.
-----------------------------------------------------------x
In re:
                                                            Chapter 11
Vitaris Rehabilitation West Side, LLC,
                                                            Case No.
                              Debtor.
-----------------------------------------------------------x
```

## SWORN DECLARATION PURSUANT TO LOCAL BANKRUPTCY RULE 1007-4

Eric Smith, pursuant to 28 U.S.C § 1746, declares under the penalties of perjury as follows:

1. I am a managing member of the general partner of Ziegler Healthcare Fund I, L.P., the sole member of Vitaris Rehabilitation, LLC, Vitaris Rehabilitation Bay Shore, LLC, Vitaris Rehabilitation Bronx, LLC , Vitaris Rehabilitation Commack, LLC , Vitaris Rehabilitation East Side, LLC , Vitaris Rehabilitation Garden City, LLC, Vitaris Rehabilitation Long Beach, LLC, Vitaris

Rehabilitation Mount Sinai, LLC and Vitaris Rehabilitation West Side, LLC (collectively "Vitaris" or the "Debtors"). I submit this affidavit in accordance with EDNY LBR 1007-4.

2. I have been associated with the Debtors in my current capacity since their formation. I am familiar with the day-to-day operations, business and financial affairs of the Debtors.

3. On July 14, 2011 (the "Petition Date") each of the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code").

4. With the instant Chapter 11 filing, the Debtors intend to operate their businesses as debtors-in-possession under sections 1107(a) and 1108 of the Bankruptcy Code and utilize the protections afforded by the Bankruptcy Code to facilitate an orderly liquidation of their assets as a going concern through a Chapter 11 Plan of Liquidation. I am advised by counsel that this Court has jurisdiction over the Debtors' chapter 11 cases pursuant to 28 U.S.C. §§ 157 and 1334 and venue is proper in the United States Bankruptcy Court for the Eastern District of New York pursuant to 28 U.S.C. §§ 1408 and 1409.

### Nature of the Debtors' Business and Circumstances Leading to the Debtors' Filing under Chapter 11

5. Vitaris provides business support services, personnel, facilities, equipment, and supplies required for the day-to-day operation of physical therapy and sports rehabilitation practices pursuant to management service agreements. As of the Filing Date, the Debtor owns, manages and operates 8 outpatient physical therapy clinics in Nassau and Suffolk Counties and New York City that are professionally staffed by New York Physical and Occupational Therapy, PLLC.

6. The sole equity holder of the Debtor is Ziegler Healthcare Fund I, LP ("ZHF"). ZHF is a mezzanine capital fund organized in the State of Delaware. ZHF operates as a Small Business Investment Company, which is regulated by the Small Business Administration. Through this fund, ZHF offers fixed-rate mezzanine loans for the acquisition, refinancing, construction and recapitalization to healthcare companies throughout the United States.

7. The current Debtor entities are successors through foreclosure of New York Outpatient Management Services, LLC ("NYOMS"). Prior to 2003, NYOMS provided outpatient rehabilitation therapy services in New York State and Maryland. NYOMS owned, managed and operated 20 outpatient physical therapy clinics throughout New York. (It also owned a billing and collection services company in North Carolina and a personal injury company in Maryland).

8. NYOMS' clinics offered an array of outpatient rehabilitation services ranging from physical therapy, occupational therapy, speech therapy and medical consultation. Most clinics focused on orthopedic and neurological pathologies and several offered additional specialties including pain management, geriatrics, hand therapy, incontinence, nutrition, Pilate's and prosthetics.

9. In the New York area, NYOMS provided management service to New York Physical and Occupational Therapy, PLLC ("NYPT"). NYPT is a separately owned corporation with no affiliation with NYOMS. It is NYPT's experienced staff of physical and occupational therapists that provide the actual outpatient physical and occupational therapy services at the NYOMS facilities in the New York area. NYPT operated under a turnkey management agreement with NYOMS.

10. On June 3, 2003, ZHF made a mezzanine loan to NYOMS in the amount of $4,120,000 (the "NYOMS Loan") (NYPT was not a borrower under the ZHF Loan).

11. The President of NYOMS, Louis DiNitto, passed away unexpectedly in April 2005. Mr. DiNitto's eldest child, Tara DiNitto, who was not involved in the operations of the company prior to Mr. DiNitto's death, became the acting President. Up until Louis DiNitto's death, NYOMS was a performing loan for ZHF; it consistently had a debt service coverage ratio in excess of 1.50x and had paid down the original loan from $4.12 million to $2.8 million. Shortly after Mr. DiNitto's death, ZHF met with Ms. DiNitto who informed ZHF that she intended to operate the company until it could be sold.

12. Towards this end, in August 2006, NYOMS engaged Martin Acquisitions Group, LLC to find a buyer for the Company. A buyer was found and in May 2007, NYOMS and Fitness Forum, an owner/operator of outpatient physical rehab facilities in upstate New York, executed a Letter of Intent (LOI). During due diligence, Fitness Forum became concerned about the company's financial performance by the reduced EBITDA in recent months versus what they had based their quote. In June, 2007, Fitness Forum reduced their offer from $8.9 million to $7.25 million ($4 million in cash and the rest in a note). Due to the length of time to get to a sale and the declining sales price, ZHF engaged an accounts receivable specialist, Breslin & Young to audit the accounts receivables and provide a liquidation value. By July, 2007, Fitness Forum told the Company that they would not be able to close until the end of August, due to other deals that they were working on. However, they stated that they remained committed to the deal.

13. Breslin & Young completed their report in mid-July. The report stated that although ZHF was fully collateralized by good accounts receivable, the liquidation time on approximately $2 million of the accounts receivable would take a substantial amount of time to collect. In addition, Breslin &Young evaluated the profitability of each of the rehabilitation centers. This allowed ZHF to narrow down the number of centers that ZHF would acquire in the event of a foreclosure process.

14. In mid-August 2007 ZHF met with Tara DiNitto and discussed a potential plan for ZHF to do a friendly foreclosure on certain assets of NYOMS, should the sale to Fitness Forum not go through. Shortly thereafter, Fitness Forum decided not to purchase the Company outright due to investor concern. As a result, ZHF proceeded with its foreclosure plans.

15. As part of ZHF's due diligence prior to foreclosure, ZHF engaged a clinical specialist to evaluate the New York rehab centers. In mid-October, the clinician evaluated the centers and recommended those centers that ZHF should acquire and those that should be closed. In addition, the clinical specialist made recommendations as to what should be further invested in each center, retention and incentive plans, growth recommendations, etc.

16. In February 2008, ZHF formalized its foreclosure plans that would essentially "recap" the old loan with a new loan from ZHF that would pay-off the outstanding debt and provide additional cash for working capital and capital expenditures. ZHF planned to split the acquired assets into two separate Newco LLCs. Newco A would acquire the assets located in Washington, DC and Newco B would acquire the assets in New York. These two divisions have different business models and ZHF believed they would run more efficiently if they were separated.

17. ZHF prepared its credit bid, and formalized its Asset Purchase Agreement to be used in the bidding process which identified the assets subject to the proposed bid, terms of employment for key management and any additional consideration allocated to transition/wind down agreements for Assets that were not subject to the proposed credit bid.

18. On March 1, 2008, ZHF sent notice of foreclosure to NYOMS and all lien holders and a Notice of Disposition that advertised the public auction of the assets of NYOMS. The auction of NYOMS' assets was held on March 20, 2008. There was only one other party that attended the auction. ZHF credit bid its debt and won.

19. After the foreclosure sale, ZHF formed the two Newco's – Vitaris Rehabilitation, LLC, to own the New York assets and VR Subsidiary, LLC, to own the Washington, D.C. assets. ZHF assigned its winning bid rights to the two newly formed companies.

20. IIn addition to the "parent" LLC, Vitaris Rehabilitation, LLC, ZHF also formed separate LLC's to hold the leases for each of the clinics. With this Chapter 11 filing, separate petitions have been filed for each Vitaris entity that is still operating and a motion to procedurally consolidate the debtor entities will be filed. For purposes of this affidavit, the eight clinics and corresponding LLCs that are also debtors in this proceeding are as follows:

| Company | Clinic Address |
| --- | --- |
|  |  |
| Vitaris Rehabilitation Bay Shore, LLC | 605 East Main Street<br>Bay Shore, NY 11706 |
| Vitaris Rehabilitation Bronx, LLC | 2100 Bartow Avenue<br>Suite 208<br>Bronx, NY 10475 |

7

| | |
|---|---|
| Vitaris Rehabilitation Commack, LLC | 763 Larkfield Road<br>Suite 101<br>Commack, NY 11725 |
| Vitaris Rehabilitation East Side, LLC | 60 East 56th Street<br>5th Floor<br>New York, NY 10022 |
| Vitaris Rehabilitation Garden City, LLC | 975 Franklin Avenue<br>Garden City, NY 11530 |
| Vitaris Rehabilitation Long Beach, LLC | 20 West Park Avenue<br>Suite 303<br>Long Beach, NY 11561 |
| Vitaris Rehabilitation Mount Sinai, LLC | 5499 Route 347<br>Mount Sinai, NY 11766 |
| Vitaris Rehabilitation West Side, LLC | 250 West 100th Street<br>New York, NY 10025 |

### VITARIS REHABILITATION, LLC

21.     On April 1, 2008, ZHF invested a total of $4.7 million into Vitaris Rehabilitation, LLC. Of this amount $2.35 million was structured as a loan with a 12% current pay coupon and 1% cash flow participation for an overall rate of 13%. The remaining $2.35 million was structured as an equity investment. ZHF as the Equity Investor owns 100% of the equity in Vitaris.

22.     Like NYOMS, the newly formed Vitaris Rehabilitation, LLC ("Vitaris"), provides management services to outpatient rehabilitation and occupational therapy clinics throughout Manhattan and Long Island. While at one time Vitaris was managing twenty (20) clinics, it has recently reduced to eight (8) the number of clinics it manages. Most of the clinics focus on orthopedic and neurological pathologies and several offer additional specialties including pain management, geriatrics and hand therapy.

23.     The clinics continue to be professionally staffed by NYPT. Vitaris has a management agreement with NYPT for all administrative services, equipment leasing, etc., which is described below.

24.     Commencing in April 2008, the new Vitaris management team instituted a number of cost cutting strategies as well as new initiatives to grow patient visits at the remaining clinics. First, they closed down the under-performing clinics that dramatically reduced the cash burn per month. Second, they moved the billing and collections department from North Carolina to New York thereby eliminating approximately $65K per month in overhead. Third, as part of the restructuring ZHF allocated approximately $731K for various improvements such as capital improvements to the remaining clinics, new billing and collections software and a significant marketing budget, to highlight a few major initiatives.

25. Even with these new initiatives, Vitaris was not able to stem the slide in visits. From April 2008 through 2011, visits have dropped significantly year after year. The table below compares visits per year.

| VISITS | 2009 | 2010 | 2011 | 2012* |
|---|---|---|---|---|
| Jan | 4,057 | 4,385 | 2,638 | 2,793 |
| Feb | 4,604 | 4,136 | 2,926 | 3,088 |
| Mar | 5,454 | 5,562 | 3,651 | 3,837 |
| Apr | 5,656 | 5,312 | 3,444 | 3,621 |
| May | 5,265 | 4,729 | 3,298 | 3,470 |
| Jun | 5,768 | 5,385 | 3,594 | 3,776 |
| Jul | 5,319 | 4,574 | 3,477 | 3,655 |
| Aug | 5,005 | 4,893 | 3,905 | 4,099 |
| Sep | 5,379 | 4,321 | 3,909 | 4,101 |
| Oct | 5,888 | 4,299 | 4,063 | 4,259 |
| Nov | 5,138 | 4,225 | 4,003 | 4,199 |
| Dec | 4,910 | 3,229 | 3,916 | 4,113 |
| **Total** | **62,443** | **55,050** | **42,824** | **45,012** |
| **Growth Rate** | | **-11.8%** | **-22.2%** | **5.1%** |

*Assumes 4% growth in visits from 2011 to 2012

26. The majority of this drop can be attributed to the loss of two productive therapists- one therapist from the Mount Sinai clinic and the other therapist from the New York West Side clinic. However even when these two clinics are removed from the mix, visits at the remaining six clinics dropped by over 10% from 2009 to 2010 and an additional 4 % from 2010 to projected 2011 visits. Overall, management is projecting visits to drop by more than 30% from 2009 to projected 2011.

27. Secondary to the loss of the senior therapists in the New York West Side and Mount Sinai clinics, the main explanation for this decrease in the projected visits put forth by Management and the clinical directors is that as insurance companies increase co-pays, patients have decreased the number of visits. Co-pays have increased from $10 to $20 per visit to as much as $50 per visit.

28. The clinical directors also site a lack of a coordinated marketing effort as another cause for the drop in visits. However, since the fall of 2008 Vitaris has employed one to two marketers, redesigned the company's website and produced marketing materials and advertisements. In addition, the company allowed clinical directors to design their own specific marketing programs to top referring physicians. Only one director took advantage of this program.

29. Contrary to the lack of growth at the Vitaris clinics, visits at the majority of acquisition opportunities ZHF has looked at have either been flat or grown at 1% - 2% per year. Therefore if the overall market remained stable over this time period, one could conclude that NYPT lost market share to its competitors.

## REVENUE PER CLINIC

30.     The net revenue per clinic prior to corporate expenses is approximately breakeven for projected 2011. Roughly 42,000 visits per year or 3,500 visits per month are needed to cover clinical operating expenses prior to corporate expenses.

NET OPERATING INCOME

|  | **2011** | **2012** |
|---|---|---|
| Bay Shore | ($39,089) | ($1,342) |
| Bronx | $7,659 | $54,193 |
| Commack | $22,791 | $49,697 |
| Garden City | $48,937 | $75,631 |
| Long Beach | ($17,039) | $11,500 |
| Mt. Sinai | $45,256 | $87,326 |
| NY East | ($11,415) | $46,487 |
| NY West | $3,496 | $49,339 |
| **TOTAL** | **$60,596** | **$372,831** |
| **OPERATING MARGIN** | **2.07%** | **12.00%** |

31.     Corporate expenses in 2011 are projected to be $948,137 and $719,491 in 2012. Corporate expenses include salaries of CEO and the billing and collections coordinator, fees for outsourced billing and collection efforts, a full time and a part time marketer and front desk staff at the clinics. Of the $948K in corporate expenses, wages and benefits account for approximately 66% of the expense, with the remaining 34% attributable to costs associated with software licensing, marketing expenses and other general office operating expenses.

32.     The projected reduction in corporate overhead expenses from 2011 to 2012 is the result of two cost saving measures: 1) Termination of accounting staff – accounting is being outsourced; and 2) elimination of corporate offices.

## REASONS FOR FILING BANKRUPTCY

33. Since ZHF acquired Vitaris in 2008, ZHF has funded $816,000 in operating losses at Vitaris and NYPT. The revised 2011 and 2012 budget projects that ZHF will have to fund an additional $600,000 to $1,000,000 to cover operating losses assuming visits stabilize. Assuming that ZHF funds this additional $1 million, ZHF total investment in Vitaris would be $6,312,000. Assuming visits grow at a rate of 6% per year and also assuming the sales multiple remains at 1x, ZHF projects that it would take nine to ten years to grow the value of the company to the point where ZHF could recover its total investment. ZHF has concluded that no further investment in Vitaris is prudent. With no source of capital to cover continued operating losses, Vitaris has concluded that it needs to file for bankruptcy protection.

## PROPOSED BANKRUPTCY PLAN

34. Vitaris during the initial stages of these chapter 11 cases will continue the aggressive cost saving measures it has already implemented. Chapter 11 will allow continued operations while Vitaris investigates all of its options, including the potential sale of the business to either the existing physical therapists or to an outside buyer. It is Vitaris' preference to liquidate the company as a going a concern through a sale under section 363. It is believed that ZHF will reap the benefit of selling its collateral quickly as a going concern rather than in a fire sale courthouse steps liquidation.

## THE FIRST THIRTY DAYS

35. During the first thirty (30) days of these cases, the clinics will continue operating to the extent there is interest on the part of NYPT and the individual therapists to maintain each clinic as an operating business. Any shortfall will be advanced by ZHF.

## ADDITIONAL DISCLOSURES UNDER LOCAL RULE 1007-4

36. The Debtors' existing senior management is as follows:

    a. Douglas Bowie- Chief Executive Officer. Mr. Bowie has managed outpatient physical therapy clinics for the last 11 years. Prior to Vitaris, Mr. Bowie managed approximately 30 physical therapy clinics for Select Medical in the New England area. Mr. Bowie is responsible for the day–to-day management of Vitaris.

    b. Liz Meritz – Billing and collections coordinator.

37. The debtor is not a small business debtor within the meaning of Bankruptcy Code § 101(51D).

38. Being filed simultaneously herewith are accurate lists of I) the twenty (20) largest general unsecured creditors (Exhibit A) and ii) the largest secured creditor of all the Debtors (Exhibit B).

39. There are no pending litigations against any of the Debtors.

40. The Debtors' books and records are located at the offices of ZHF which is located at 1040 Broad Street, Suite 103, Shrewsbury, NJ 07702.

41. Balance Sheets for each of the Debtors as of May 31, 2011 are annexed hereto as Exhibit C.

42. The only Debtor that has employees is Vitaris Rehabilitation LLC which has approximately 9 full time employees and 8 part time employees. The estimated weekly payroll to employees for the 30-day period following the filing of the Chapter 11 petition is $ 24,595.

43. A schedule for the 30-day period following the filing of the Chapter 11 petitions of estimated cash receipts and disbursements, net cash gains or losses, and obligations and receivables expected to accrue but remain unpaid (other than professionals) on a consolidated basis is attached hereto as Exhibit D.

44. A list of the Debtors' real estate leases is attached hereto as Exhibit E.

/s/ Eric Smith
Eric Smith, Member

Sworn to before me this
13th day of July, 2011

/s/ Lisa Cirillo
Notary Public
New Jersey
7-19-2012